UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| PHILLIP ORLANDO EALY JOHNSON | CIVIL ACTION NO. 19-cv-147 SEC P |
| VERSUS | JUDGE ELIZABETH E. FOOTE |
| WARDEN ANGOLA STATE PRISON | MAGISTRATE JUDGE HORNSBY |

**REPORT AND RECOMMENDATION**

**Introduction**

A Caddo Parish jury returned a unanimous verdict that Phillip Orlando Johnson ("Petitioner") was guilty of aggravated rape and aggravated kidnapping of a 13-year-old girl. He was given concurrent life sentences. The convictions were affirmed on direct appeal. State v. Johnson, 175 So.3d 442 (La. App. 2d Cir. 2015), writ denied, 206 So.3d 203 (La. 2016). Petitioner later filed two post-conviction applications in state court, and they were denied. He now seeks federal habeas corpus relief on three claims of ineffective assistance of counsel and a claim of actual innocence. For the reasons that follow, the petition should be denied.

**Background Facts**

K.J., a 13-year-old girl, testified that she was walking to school on West 73rd Street in Shreveport in November 2010 when a man grabbed her by her neck, held a knife to her stomach, and dragged her into an abandoned, burned-out house. Two witnesses testified that they saw the man grab K.J. off the street by her neck and drag her into the house as

she screamed for help. One of the witnesses called the police, and Officer Rodney Medlin responded.

Officer Medlin testified that he entered the house and saw the man on top of K.J., who had her pants pulled down and her shirt pulled up. Medlin noted that the man had something in his hand, which the man dropped as he fled. Medlin recovered the object, which was a knife. He was also able to arrest Petitioner, who was wearing latex gloves. Medlin searched the area of the arrest and located two more latex gloves and a used condom. A DNA expert testified that Petitioner's DNA was found on the inside of the condom, and K.J.'s DNA was found on the outside of the condom. K.J. positively identified Petitioner as her attacker soon after the arrest.

K.J. testified that after Petitioner dragged her inside the house, he pulled out his penis and ordered her to perform oral sex. She did so as he stood over her. K.J. said that Petitioner also attempted vaginal penetration but was unable to do so. K.J. told a sexual assault nurse that her attacker had inserted his penis in her vagina but said that she had not performed oral intercourse. When K.J. was interviewed at the Gingerbread House, an advocacy center for children, she stated that her attacker had put his penis in her vagina rather than her mouth. These inconsistencies were not critical because aggravated rape includes oral or vaginal intercourse committed without consent upon a person under certain circumstances.

**Ineffective Assistance of Counsel**

    **A. Introduction**

Petitioner argues that his attorney rendered ineffective assistance of counsel in three ways. To prevail on such claims, Petitioner must establish both that his counsel's performance fell below an objective standard of reasonableness and that, had counsel performed reasonably, there is a reasonable probability that the result in his case would have been different. Strickland v. Washington, 104 S.Ct. 2052, 2064 (1984). The state court denied the Strickland claims on the merits.

    **B. Habeas Burden**

Petitioner's claims were adjudicated and denied on the merits by the state court, so 28 U.S.C. § 2254(d) directs that the question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether the determination was unreasonable, which is a substantially higher threshold. Schriro v. Landrigan, 127 S.Ct. 1933, 1939 (2007). The Strickland standard is a general standard, so a state court has even more latitude to reasonably determine that a defendant has not satisfied it. The federal court's review is thus "doubly deferential." Knowles v. Mirzayance, 129 S.Ct. 1411, 1420 (2009). For the federal court to grant relief, "[t]he state court decision must be so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Woods v. Etherton, 136 S. Ct. 1149, 1151 (2016) (per curiam) (quotation marks removed).

"If this standard is difficult to meet, that is because it was meant to be." Harrington v. Richter, 131 S.Ct. 770, 786 (2011). Section 2254(d) "stops short of imposing a complete

bar on federal court relitigation of claims already rejected in state proceedings" and reaches only "extreme malfunctions" in the state criminal justice system. Id. Thus, "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id.

### C. No Second Batson Challenge

Petitioner, who is African American, was represented by attorney Steven P. Harrelson. The jury selected in Petitioner's case consisted of six white jurors and six black jurors. The jury was also equally divided by male and female members. The two alternates were a black male and a white male.

Defense counsel raised a Batson[1] challenge after the State used peremptory strikes against three black prospective jurors from among the ten black venire members in the first two jury panels. Judge Brady O'Callaghan found that the defense did not make out a prima facie case under step one of the Batson analysis and denied the challenge. That decision was affirmed on appeal. State v. Johnson, 175 So.3d at 454-56.

Petitioner argued in a post-conviction application and in this habeas petition that trial counsel rendered ineffective assistance because he did not raise a *second* Batson

---

[1] Batson v. Kentucky, 106 S.Ct. 1712 (1986) provides a three-step process for a trial court to use in adjudicating a claim that a peremptory challenge was based on race: First, a defendant must make a prima facie showing that a peremptory challenge has been exercised on the basis of race; second, if that showing has been made, the prosecution must offer a race-neutral basis for striking the juror in question; and third, in light of the parties' submissions, the trial court must determine whether the defendant has shown purposeful discrimination. Snyder v. Louisiana, 128 S. Ct. 1203, 1207 (2008). To establish a prima facie case under Batson, "a defendant (1) must show that he is a member of a cognizable racial group, and that the prosecutor has exercised peremptory challenges to remove members of the group from the venire; (2) is entitled to rely on the fact that peremptory challenges constitute a jury selection practice that permits those to discriminate who are of a mind to discriminate; and (3) must show that these facts and circumstances raise an inference that the prosecutor exercised peremptory challenges on the basis of race." Higgins v. Cain, 720 F.3d 255, 265-66 (5th Cir. 2013).

challenge after the State used peremptory strikes against three more black prospective jurors. After the voir dire of a third panel, the State struck Mr. Kennedy (white male) and Ms. Alexander (black female). The defense struck Mr. Bowen (white male), and both sides made a simultaneous strike of Mr. Calbert (black male). The defense used two back-strikes against Mr. Blakes (black male) and Mr. Adams (white male). The State struck Ms. Moody, whose race is not identified in the record, as an alternate. Tr. 954-58.

The State points to parts of the record that may have influenced the use of the strikes. Ms. Alexander had served on a jury in a murder case where the defendant was acquitted, one of the prosecutors in this case was first chair in that prior case, and Ms. Alexander's niece was a victim of child rape. Tr. 836-847, 946-50. Mr. Calbert (struck by both sides) was the father of a young daughter, which he said would make it difficult for him to sit on the jury, and he said he was not sure he could send someone to prison for life. Tr. 869-70, 893-95. Ms. Moody was a victim of molestation when she was about the age of the victim in this case. Tr. 848-50.

Petitioner raised this claim in his post-conviction application. Judge O'Callaghan, who presided over the voir dire, addressed the application. He noted that Louisiana courts have consistently held that conclusory allegations will not suffice to prove a claim of ineffective assistance of counsel, and he faulted Petitioner for not alleging with any particularity facts giving rise to a prima facie case of racial discrimination in the State's use of peremptory challenges. Petitioner, he held, failed to prove that there was a legal basis for which counsel could have lodged a valid <u>Batson</u> objection, and Petitioner did not demonstrate that had counsel raised the challenge the outcome of his case would have been

different. Tr. 1806-07. The state appellate court summarily denied a writ application, stating, "On the showing made, the writ is denied." Tr. 1913. The Supreme Court of Louisiana denied a writ application and stated that Petitioner "fails to show that he received ineffective assistance of counsel under the standard of Strickland []." Tr. 2060-61.

Petitioner was convicted by the unanimous verdict of a jury consisting of six black jurors and six white jurors. The three strikes at issue with respect to this claim were used against one black woman, a black man (also struck by the defense), and a person whose race is uncertain. The state court rejected on the merits the claim that defense counsel rendered ineffective assistance because he did not raise a Batson challenge based on these facts. That decision is subject to the doubly deferential standard required by Section 2254(d). Perhaps counsel could have mustered a Batson challenge based on this record, but there is no strong indication that the challenge would have succeeded. He was not constitutionally deficient in his performance to omit such a challenge, and Petitioner cannot show that there is a reasonable likelihood that his verdict would have been different had counsel made the challenge. Under these circumstances, and especially considering the standard required by Section 2254(d), Petitioner is not entitled to habeas relief on this claim.

### D. Prosecutor's Closing Argument

Petitioner argues that defense counsel rendered ineffective assistance because he did not object to the closing argument of the prosecutor that offered and argued her personal opinion. Under Louisiana law, the scope of proper closing argument is confined to "evidence admitted, to the lack of evidence, to conclusions of fact that the state or

defendant may draw therefrom and to the law applicable to the case." La. Code Crim. Pro. art. 774. But a prosecutor is afforded considerable latitude in making closing arguments. State v. Byrne, 483 So.2d 564 (La. 1986). As a general rule, the prosecutor may not use closing argument as a vehicle to express her personal opinions about the defendant when her opinion is expressed in a manner that the jury may understand has been formed from evidence outside of the record. State v. Procell, 365 So.2d 484, 489 (La. 1978). Such an opinion is permissible if the prosecutor refers to, or it is apparent that her opinion is based on, the evidence of record. Id. Even when Louisiana courts have found that a prosecutor exceeded the proper bounds of argument, the courts often criticize the arguments but seldom find that they constituted reversible error. Reversal is appropriate only when the court is firmly convinced that the jury was influenced by the remarks and that they contributed to the verdict. State v. Bentley, 182 So.3d 1269, 1278 (La. App. 3d Cir. 2016).

Petitioner cites 13 examples where the prosecutor made what he believes were objectionable arguments. Doc. 1, p. 9. The prosecutor began by describing some of the witnesses who testified. With respect to the victim, the prosecutor said that you could see in her demeanor that she was not looking forward to testifying, but she did and was polite and respectful. "I think she was very straightforward." Tr. 1465. When the prosecutor discussed how flight can be an indication of guilt, she told the jury that "*I think it's clear*, as you saw in the video you were able to evaluate for yourself, this flight was because *he knew he was caught* in the act of aggravated rape …." Tr. 1475 (emphasis on language to which Petitioner objects). Later, the prosecutor described some of the evidence, including K.J.'s statement and testimony. She said that "especially after hearing her on the stand, I

Page 7 of 13

feel more confident than ever that an aggravated rape occurred and that an aggravated kidnapping occurred." Tr. 1478. The prosecutor again discussed some of the evidence and said, "I think when you look at the evidence it backs up what she said, that she was forced to perform oral sex on this defendant." Tr. 1489. When the prosecutor discussed one of the elements, she said, "I don't think there is any doubt in this case, whatsoever, that happened in this case, that the victim was physically injured or sexually abused, or she was imprisoned or kidnapped when the offender is armed with a dangerous weapon." Tr. 1525-26. Petitioner provides other examples, each of a similar nature.

When Petitioner presented this argument in his post-conviction application, the trial court reviewed applicable Louisiana law and noted Petitioner's objection to several comments that included terms like "I think," "I believe," or "in my opinion." The court noted that Petitioner did not argue that the comments were based on facts not in evidence, and he failed to otherwise allege any facts to demonstrate that the comments were improper. The court believed that the statements were based on evidence produce at trial and the prosecutor's interpretation of that evidence. The argument was found to be "well within the scope of proper closing argument and therefore not subject to objection by trial counsel." The court was also not convinced that the remarks improperly influenced the jury or contributed to the verdict. Tr. 1807-08. The appellate court and supreme court summarily denied writ applications, as noted above.

The Fifth Circuit has "recognized that deciding whether to object before a jury is a quintessential matter of trial strategy not to be second-guessed." Thomas v. Thaler, 520 Fed. Appx. 276, 281 (5th Cir. 2013). The statements noted by Petitioner do not appear

have been subject to a meritorious objection, so counsel cannot be faulted for his inaction. The state court made such a finding in a well-reasoned opinion. The undersigned cannot say that the state court's adjudication of this Strickland claim on the merits was not only incorrect but was an objectively unreasonable application of Strickland. To the contrary, the decision appears to be correct. Habeas relief is not available on this claim.

### E. No Motion for Recusal

Judge O'Callaghan served as a member of the district attorney's office before he was elected to the bench. Petitioner argues that defense counsel was ineffective because he did not move to recuse the judge based on the appearance of a conflict. Petitioner argues that the judge "had recently been in a supervisory position with the Caddo District Attorney's Office and may have had some prior knowledge of the case." Petitioner argues that the judge "had been associated with the prosecuting attorneys during his prior employment" with the D.A.

Judge O'Callaghan addressed the post-conviction claim. He noted that Louisiana Code of Criminal Procedure Article 671 does not require recusal of judges "solely on the basis that they were formerly employed by the prosecutor's office." He also referred to State v. Connolly, 930 So.2d 951 (La. 2006), which declined to treat ADAs within the same office as an association of lawyers within a firm for purposes of Article 671 and stated that, for a judge to be disqualified, he must have performed some role in the case, have obtained actual knowledge of disputed evidentiary facts, or held some supervisory role over the attorneys who prosecuted the case. Id. at 954-55. Furthermore, the party seeking recusal

"must establish grounds of a substantial nature based on more than conclusory allegations." State v. White, 968 So.2d 901, 907 (La. App. 2d Cir. 2007).

The judge noted that Petitioner contends that the judge held a supervisory position within the D.A.'s office, but Petitioner did not allege that the judge held such a position over the two attorneys who prosecuted Petitioner. Petitioner speculated that the court "may have had some prior knowledge of the case" but offered no facts in support. Judge O'Callaghan stated that, before taking the bench, he reviewed all pending cases for potential conflicts and recused himself in a number of cases. Petitioner's conclusory allegations, he found, did not establish a legal basis for recusal in this case. Trial counsel, therefore, was not ineffective because he did not move to recuse the judge. Tr. 1808-09. As noted above, the appellate court and supreme court summarily denied writ applications with respect to this issue.

The state court's adjudication of this Strickland claim appears to be well-supported by applicable Louisiana law and the facts in the record. Petitioner has merely repeated his conclusory claims about potential grounds for recusal, but no actual substance has ever been presented. This Strickland claim was reasonably adjudicated in the state court, so there is no basis for habeas relief on this claim.

**Actual Innocence**

Petitioner filed a second post-conviction application in 2019 based on what he said was newly discovered evidence. At trial, the defense suggested that K.J. was a sex worker and that she and Petitioner had a preexisting relationship. The prosecutor asked K.J. if she knew the man she identified as her attacker or if she had talked to him before. K.J.

answered no and said that if anyone testified that the two of them had an arrangement for sex, they would be telling a lie.

Petitioner's second post-conviction application included an affidavit from Pamela Young. She testified that, ten years earlier, she lived next door to K.J. Ms. Young stated that she was told that K.J. testified that she did not know Phillip Johnson (Petitioner).

> If she said that she did not know him, she told a lie. On more than one occasion I remember seeing [K.J.] and Phillip Johnson in the front yard talking and laughing together. To me it appeared they were friends.

Tr. 2102. Petitioner's application stated: "The basis of this claim is actual innocence." Tr. 2067.

Judge Charles Tutt denied the application because he was not persuaded that the new evidence was such that it could not have been discovered earlier by the exercise of due diligence, making the application untimely under La. Code Crim. Pro. art 930.8(A)(1). He added that the new statement could not overcome the heavy evidence of guilt at trial, including two witnesses who testified that they saw Petitioner grab the victim by her neck and drag her into a burned out house as she screamed for help. The judge stated that, with that evidence, it made no difference if the victim knew Petitioner previously or even if they had an ongoing sex-for-hire relationship. She still would not deserve to be dragged screaming into a house and raped by an armed man. Tr. 2103-05. The appellate court denied a writ application on the showing made, citing La. C. Cr. P. arts. 930.2 (burden of proof) and 930.8(A)(1) (untimeliness). Tr. 2164. Petitioner filed a writ application with the Supreme Court of Louisiana, but the court refused to consider the application because it was not timely filed within the 30 days allowed by rule. Tr. 2244.

Petitioner was allowed to amend his federal habeas petition to add this claim. The State argues that the claim is untimely, unexhausted, and not a cognizable claim for relief. Only the final argument needs to be addressed. The claim fails on the merits because a claim of actual innocence based on newly discovered evidence does not state an independent ground for habeas relief. Rather, a claim of actual innocence may only serve as a gateway through which a habeas petitioner must pass to have an otherwise procedurally barred constitutional claim considered on the merits. Herrera v. Collins, 113 S.Ct. 853 (1993); Coleman v. Thaler, 716 F.3d 895, 908 (5th Cir. 2013). Petitioner presents an independent substantive claim that he is actually innocent, but "[t]he Fifth Circuit does not recognize freestanding claims of actual innocence on federal habeas review." In re Swearingen, 556 F.3d 344, 348 (5th Cir. 2009).

Accordingly,

It is recommended that Petitioner's petition for writ of habeas corpus be denied.

**Objections**

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

An appeal may not be taken to the court of appeals from a final order in a proceeding under 28 U.S.C. § 2254 unless a circuit justice, circuit judge, or district judge issues a certificate of appealability. 28 U.S.C. § 2253(c); F.R.A.P. 22(b). Rule 11 of the Rules Governing Section 2254 Proceedings for the U.S. District Courts requires the district court to issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate may issue only if the applicant has made a substantial showing of the denial of a constitutional right. Section 2253(c)(2). A party may, within fourteen (14) days from the date of this Report and Recommendation, file a memorandum that sets forth arguments on whether a certificate of appealability should issue.

THUS DONE AND SIGNED in Shreveport, Louisiana, this 28th day of January, 2022.

_____
Mark L. Hornsby
U.S. Magistrate Judge